THE CITY OF JOLIET

*v.*

PATRICK LOONEY.

*Filed at Ottawa January 20, 1896.*

1. NOTICE—*defective sidewalk—when notice to policeman is notice to city.* Notice to a policeman of the defective condition of a sidewalk is notice to the city, where the policemen have for several years been charged with the duty of reporting defects in sidewalks by writing in a book kept for such purpose, with the knowledge of the superintendent of streets, who resorted to such reports for information.

2. TRIAL—*further instruction to the jury after retirement.* A written instruction may be given to the jury after their retirement, in respect to a material point in the case, concerning which no instruction has been given, where equal opportunity has been given to each side to submit further instructions.

3. SAME—*sending instruction to jury room—what will waive the error.* The objection that an instruction was sent to the jury room, and not given in open court, is waived by failure to object thereto and requesting other instructions to be sent to the jury room.

*City of Joliet* v. *Looney,* 56 Ill. App. 502, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

JOHN W. D'ARCY, for appellant.

Per CURIAM: This is an appeal from a judgment of the Appellate Court affirming a judgment rendered against appellant, in favor of appellee, by the circuit court of Will county, for damages arising from a personal injury received by appellee, caused by the breaking of a defective flagstone in the sidewalk of one of the streets of the appellant city. The case was twice tried in the circuit court, and the questions argued in this court are sufficiently answered in the opinion of the Appellate Court delivered by Mr. Justice CARTWRIGHT, and no necessity is perceived for another or different opinion by this court.

We have carefully examined the record and considered the argument of appellant's counsel, and have arrived at the same conclusions reached by the Appellate Court. The opinion there rendered will therefore be adopted by this court. It is as follows:

"The record of a judgment in this suit in favor of the present appellant, against appellee, was brought to this court at a former term by writ of error, and that judgment was reversed and the cause remanded. The case was reported as *Looney* v. *City of Joliet*, 49 Ill. App. 621. After re-instatement in the circuit court the case was again tried, resulting in a verdict for appellee for $1500, and judgment was entered for that amount and costs.

"The evidence on the last trial as to the defect and the accident was the same as before, and the important questions of fact related to the question of notice, express or implied, to defendant of the defect, and to the extent of plaintiff's injuries. The evidence introduced to prove notice to the defendant of the defective condition of the stone, either on account of the existence of such condition for such length of time that knowledge would be implied, or from actual information, consisted of testimony that one who worked in the store in front of which the stone was located, noticed, six weeks before the accident, that the stone was cracked and was shaking every day when he stepped on it; that when a policeman of defendant passed over it a couple of days before the accident it shook under his heel, and he examined it with his lantern and reported to a police captain at the station, telling him that he had better put it in the record and have the street commissioner look after it; that a police captain on duty on the evening of the accident was notified of the defect, and that for several years it has been one of the duties performed by the police to report all defective sidewalks found by them and enter the same in a record kept at the police station for the purpose, to which the superintendent of streets was ac-

customed to go for information as to such defective side-walks. On the other hand, the defendant proved that a number of persons accustomed to pass over the stone frequently had not noticed the defect, and the police captain denied that the policeman reported the defect to him a couple of days before the accident, and testified that such report was after the stone fell.

"The evidence would justify the jury in a finding that the defect had existed for six weeks or more, and that the defendant, by the exercise of reasonable care, would have discovered and remedied it; but the court gave an instruction under which they might find, from the evidence, that the defendant also had actual notice of the defect, and the rulings on the evidence were in harmony with the instruction. Most of the argument for appellant is directed to the question whether actual notice could be given to the defendant in the manner stated in the instruction and shown by the evidence. The instruction is as follows:

" 'If you believe, from the evidence, that plaintiff was injured by a defect in the sidewalk of defendant as alleged in plaintiff's declaration, and if you further believe that for several years prior to and at the time of such injury, with knowledge and approval of the superintendent of streets, a book was kept at the police station in the city of Joliet in which policemen were directed to note defects in sidewalks, and that the policemen of said city were charged with the duty of examining and reporting to their departments defects in sidewalks observed by them, for the benefit of the superintendent of streets, and that at that time the superintendent of streets was accustomed to resort to said book and to the reports of said policemen for information concerning defects in sidewalks, and that one or more of the policemen in the employ of defendant noticed the defect in the sidewalk so long before the time of the injury that there was time, in the exercise of ordinary care, to report and repair said defect, then such notice to the city of Joliet, and the fail-

ure to remedy the defect within a reasonable time after such notice, would constitute negligence on the part of the defendant.'

"We do not think the instruction objectionable. In reversing the former judgment, we held, in substance, that if the police, with the knowledge and approval of the officers having general charge of the affairs of defendant, had for several years been charged with and had been performing the duty of inspecting sidewalks and reporting defects therein by which the agencies for their repair were set in motion, then notice of the defect to a policeman would be notice to the defendant. The conditions recited in the instruction could not have existed, and the duty have been imposed and performed, for several years without the concurrence of the police department, as well as the superintendent of streets, and the knowledge and approval of the mayor, who was by law and ordinance the head of the police department and had general charge of the affairs of the city. The city council, and all those having such general charge, could not have been ignorant that the police were acting for the city in the inspection of sidewalks and reporting defects, and, under the decision heretofore made, notice to one so acting would be notice to defendant.

"Objection is also made to the giving of the instruction at the time it was given. The question of notice through police officers was an important one, and the record shows that the respective counsel, in their arguments to the jury, made opposite assertions as to the law on that subject. No instruction was given stating the law as to the notice before the retirement of the jury, and after such retirement the court stated to counsel that the jury had not been treated fairly in that particular and should have been instructed on that question. The court requested counsel on each side to prepare instructions accordingly, and the instruction in question was drawn on the part of the plaintiff. At the request of defendant's

attorney the court did not act in the matter until the next day, when said attorney declined to prepare any further instruction and filed eleven written objections to further instruction being given, and asked the court to give the instructions offered by him and refused on the trial. Thereupon the court sent the instruction to the jury. The objections to instructing the jury at that time, when equal opportunity was given to each side to submit further instructions, are without force.

"It is also objected that the instruction was sent to the jury room, and not given to the jury in open court. But the record recites that counsel for the defendant made no objections to the court sending the instruction to the jury room, and requested the court to send to the jury room his refused instructions. The objection is therefore not available now, as it was waived.

"It is also urged that the damages allowed were excessive. The plaintiff fell on his shoulder, and there was swelling and an abrasion of the skin, which disappeared, but he claimed that he could never use the arm afterward on account of severe pain in it and down his back, and that he could not lie on that side. He had been a strong, healthy man, and worked regularly up to the accident but never worked afterward. He had been treated by a doctor and examined by that doctor and others, who testified that there were no visible changes in the shoulder, but that he seemed to suffer pain if the arm was raised. The doctors, of course, could not feel his pain or see it, but his statement appeared truthful and the physical manifestations of pain genuine. We are not able to say that the jury awarded excessive damages. The judgment will be affirmed."

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE CARTWRIGHT took no part in the decision of this case.