Republic Company of Rockford, Illinois, Defendant in Error, v. City of Rockford, Plaintiff in Error.

Gen. No. 7,884.

Heard in this court at the February term, 1928. Opinion filed September 4, 1928. Rehearing denied January 28, 1929.

STANTON E. HYER and CARL A. SWENSON, for plaintiff in error.

WILLIAM L. PIERCE and CHARLES W. FERGUSON, for defendant in error.

Mr. Justice Jett delivered the opinion of the court.

This is a writ of error prosecuted by the City of Rockford, a municipal corporation, plaintiff in error, with a view of reversing a judgment obtained against it by the Republic Company for $7,000, alleged to have been caused by the decay of a storm sewer, causing the flooding of the building occupied by the Republic Company, and damaging its equipment, property and stock.

The declaration consists of one count. It is charged that on the 13th of June, 1926, the City of Rockford, plaintiff in error, was possessed of, and had control of a certain storm water sewer, on the south side of east State Street, in the City of Rockford, along and in front of the premises of the defendant in error, and that said storm sewer was made of certain tile pipe, two feet in diameter, and consisted of sections laid together; that the sections were approximately three feet in length; that said sewer discharged into the Rock River.

It is further charged that while the city was so possessed, and had control and supervision of said sewer, and under the obligation to use such care and supervision, it suffered and permitted the said sewer and certain of the sewer pipes, of which the same was constructed, to become and remain in an unsafe and dangerous condition, and that a certain section or sections of the sewer pipe, with which the same was constructed, had become and were broken, disintegrated, decayed and cracked, immediately in front of the premises of the defendant in error; that said defective and dangerous condition of the said sewer pipe had existed for about two years prior to the 13th of June, 1926, and that on several occasions during the said two years, the City of Rockford, by and through its superintendent of sewers, its mayor, and city engineer, had had actual notice and knowledge that the said sewer was in a defective condition; that the said plaintiff in error

carelessly and negligently suffered and permitted said sewer to remain and exist in such dangerous and defective condition; that on the 13th of June, 1926, during a rainstorm said defective section of sewer pipe gave way, and was broken by the action of the water in and around the same, and that the great force of the pressure of the water being discharged therein was forced through and into the basement of the building occupied by the defendant in error, where it operated a newspaper, printing and publishing establishment, and did great damage and injury to said plant, machinery and equipment, tools, instruments, merchandise and stock on hand.

To the declaration the City of Rockford pleaded the general issue. It will be observed that the action is based upon alleged negligence in the maintenance, supervision and repair of the sewer, and in permitting the sewer to become and remain in a defective and dangerous condition, with full knowledge, thereof. The evidence shows that there was a defect in the sewer pipe, in front of the premises of the defendant in error. Defendant in error called the superintendent of sewers of the plaintiff in error and his assistant as witnesses, and they testified that from six months to a year, possibly longer, before the sewer pipe burst, they discovered that there was a defect in one of the sewer pipes in front of the building of the defendant in error; that one of them crawled into the sewer and found this defect about 20 or 25 feet from the mouth of the outlet, which was in the exact place of the section that burst at the time of the flooding of the building.

They further testified that they talked with the business manager of the defendant in error and others, who showed them where water was coming in through the stone wall next to the sewer on a level with a broken sewer pipe, and running into the basement of defendant in error's premises.

It further appears from the evidence of one of the employees of the city that there was a leak in the section of the sewer pipe at this location, on the south side of the inner wall about half way up, and that there was a crack about 10 inches in length, and was large enough to stick an ordinary match through, at the time when they made the examination. The city engineer of the plaintiff in error testified that he had notice on one or more occasions from some of the officials of the defendant in error, that they were having trouble with the water coming into the basement from a point opposite the position of the storm water sewer, in the street. The evidence shows that the defendant in error had notified the city of the conditions at different times, covering a period of approximately two years before the flooding of the premises occurred.

The evidence clearly discloses the fact that an injury was occasioned to the premises and property occupied by the defendant in error, by reason of the sewer pipe becoming broken, decayed and cracked, and that this condition was known to the plaintiff in error.

The question now arises as to whether or not the city is liable, by reason of the alleged negligence, in the maintenance, supervision and repair of the sewer, and in permitting it to become and remain in a defective and dangerous condition.

A number of reasons are assigned for a reversal of the judgment. No complaint is made of the action of the trial court in the giving or refusing of instructions.

It is contended that the defendant in error was guilty of contributory negligence; that the court erred in the admission and rejection of evidence, and in passing upon the competency of certain witnesses to testify as to various items of alleged damage and loss occasioned by the flooding of its premises, as charged in the declaration; that the flooding of the basement, and the damage done thereby was occasioned by an alleged

unprecedented rainstorm, which created a peril, over which the city had no control, and for which it was not responsible.

So far as this record discloses, it is conceded that the municipality had adopted and installed a general system of storm water sewers in the City of Rockford.

One of the principal arguments for a reversal of the judgment is that the court erred in denying the motion, made by plaintiff in error, to direct a verdict. It is also insisted that the verdict is against the manifest weight of the evidence. The record discloses that some two years prior to the time of the alleged injury water came into the basement of the building occupied by the defendant in error. It is disclosed that the plaintiff in error had notice of this fact; that the plaintiff in error had notice that a section of said sewer drain contained a crack, through which a match could be inserted; that from time to time the drain in question would become more or less stopped up on account of the ice and other material gathering in the same, and that plaintiff in error had notice thereof. It was stipulated at the trial that the rain in question, at the time said sewer broke, was unprecedented, some four and one-half inches of rain having fallen in a very short time, and was a greater rain than had fallen, so far as the record discloses, in the same length of time, in said city. In this state of the record, plaintiff in error contends that the damage to defendant in error was caused by an act of God, therefore the city is not liable.

It is the contention of the defendant in error that while the city would not be liable for an act of God, yet, if an unprecedented rain, such as this was shown to have been, coupled with negligence on the part of the city, which approximately contributed to causing the injury to defendant in error, in that event, the rain would not be a defense, even though it be held to be the act of God.

It is the duty of a municipality, after it has adopted and installed a general system of storm water sewers, to use reasonable care to keep the sewer in a reasonably safe condition of repair, and a failure to do so will make the municipality liable. *City of Rock Island v. Gingles,* 217 Ill. 185; *City of Chicago v. Seben,* 165 Ill. 371–379. It is the rule that while the legal obligation of the city to construct gutters and grade and pave streets is one voluntarily assumed, yet, when the city constructs these improvements, affecting the welfare of the public, it then becomes the duty of the city to see that they are kept in repair. *City of Chicago v. Seben,* 165 Ill. 371, 379–380; *City of Alton v. Hope,* 68 Ill. 167.

A municipality is liable after it has constructed a general sewer system, whether storm water or sanitary, to use materials that are not defective, to keep general supervision over such sewers and to see that they do not decay or get out of repair, and to use reasonable diligence to repair the same, or to restore defective parts. *City of Fort Wayne v. Coombs,* 107 Ind. 75, 7 N. E. 743. In *Welfelt v. Illinois Cent. R. Co.,* 149 Ill. App. 317, the court quoting from the case of the *City of Fort Wayne v. Coombs, supra,* which was a suit for personal injuries, caused by a defective sewer, the trial court permitted appellees to prove that there was a break in the sewer about 100 feet from the point where the break occurred which caused the injury for which a recovery was sought and the Supreme Court of Indiana, in reviewing the judgment of the lower court, said: "This evidence was competent, in connection with the other testimony in the case, for the purpose of charging the city with knowledge, as well as for the purpose of showing that the materials used were defective, or the work of construction was not well done, and also for the purpose of showing that the sewer had, by reason of time and use, got out of repair."

Where the attention of a municipality has been legally called to a defective condition of the streets or sewers, and the municipality has either inspected or repaired the defects, and the work is done in a defective manner, or a city, upon notice, neglects to make repairs, and an injury occurs, the liability of the municipality is conclusive. *Bouillon v. City of Greenville,* 233 Ill. App. 500–501.

Notice to the mayor, the superintendent of streets, the superintendent of sewers, where such officers exist, of defective or dangerous conditions of the streets or sewers, is ample notice to the municipality to make it liable for the damage resulting to persons injured or damaged by defects. *Looney v. City of Joliet,* 49 Ill. App. 621; s. c., 159 Ill. 471.

If there is any intervening human agency, which contributes to cause the damage, it cannot be considered as caused by an act of God. If a municipality permitted a sewer, with knowledge of defective condition, to remain without repair or replacement, and an injury occurs to abutting property, by being flooded or otherwise damaged, then the mere fact that an unprecedented rainstorm also occurred, and the combined act of God and the negligence of the municipality occasion an injury, the city is liable. *Welfelt v. Illinois Cent. R. Co.,* 149 Ill. App. 317–326; *Sandy v. Lake St. El. R. Co.,* 235 Ill. 194, 202; *Wald v. Pittsburg, C., C. & St. L. R. Co.,* 162 Ill. 545.

If the municipality was negligent, as alleged in the declaration, and such negligence proximately caused alone, or concurring with the act of God, caused an injury, it is liable. *Quincy Gas & Electric Co. v. Schmitt,* 123 Ill. App. 647–655, 656. When the effect, the cause of which is to be considered, is found to be in part, the result of the participation of man, whether it be from active intervention or neglect, or failure to act, the whole occurrence is thereby humanized, as

it were, and removed from the operation of the rules applicable to the acts of God. *Mueller Grain Co. v. Chicago, P. & St. L. R. Co.,* 200 Ill. App. 347–349, 350.

We are therefore of the opinion, from what is disclosed by the record, and the law arising therefrom, that it was a question of fact for the jury, as to whether the damages to the defendant in error were chargeable to the negligence of plaintiff in error in not keeping its sewer in a proper state of repair, after having notice of its defective condition, and that the finding is not against the manifest weight of the evidence, and the court did not err in refusing the peremptory instruction.

It is also insisted by plaintiff in error that the court erred in its ruling on the admission of evidence. The objection most seriously urged by the plaintiff in error is to the testimony of the witness Pollard, who was the principal witness to testify to the damages claimed to have been sustained by the defendant in error. It is said that the court allowed him too much latitude in referring to a certain list that he had, in order to refresh his memory. The record discloses that the witness Pollard had been connected with the defendant in error company continuously since January, 1908; that his relation to said company was that of business manager; that in his capacity as business manager, he had done all of the purchasing of machinery, equipment and supplies for the said newspaper company for 15 years.

The evidence shows that the defendant in error was printing and publishing 12,000 or more papers daily. The witness Pollard testified that he was acquainted with the various items of machinery, equipment and supplies that entered into the publishing, printing and supplying of the newspaper; that he knew the fair cash market value, purchase cost and expense of producing all of the machinery and equipment for publishing such a newspaper.

The record discloses that the printing press in this establishment cost $55,000 and was purchased under the direction of the witness Pollard; that there were seven modern linotype machines and one monotype in the basement at the time of the flooding, and these machines were all purchased by and under the direction of Pollard, and he was thoroughly familiar with the cost of the machinery, and with the cost of the equipment connected with these machines. His testimony discloses the fact that he was acquainted with, and had purchased, or superintended the purchase of all of the electric motors that operated the various machines in the plant; that he was familiar with and knew the various scale of wages that was being paid for the different classes of labor employed in the business; that he knew the scale of wages paid under union labor rules, to the various classes of labor employed, and that he took wage schedules into consideration in determining the value of the labor performed by men called in, and men used overtime after the accident, in the rehabilitation, cleaning up and re-establishing of the business.

It was on the testimony of the witness Pollard, as to the amount of damages sustained, on which the jury based its findings. We have examined the evidence as found in the abstract and the cases cited by the respective litigants, bearing upon the objection made by the plaintiff in error, to the testimony of the witness Pollard. The rule is that while a witness can only testify to such facts as are within his knowledge and recollection, he is permitted to refresh and assist his memory by the use of a written instrument, memorandum or entries in a book, and it is not necessary that the writing should have been made by the witness himself, or that it should be an original writing, nor that the writing thus used should itself be admissible in evidence, provided that after inspecting the record he can speak to the facts from his own recollection. *Scovill Mfg. Co. v. Cassidy,* 275 Ill. 462–472; *Walsh v. Chicago Rys. Co.,* 303 Ill. 339–345.

It is competent to show that a party interested in the business, with knowledge of the character and value of the property, had made a list of the goods which he knew he had in the store, which were so completely destroyed that they could not be identified, and the list of the goods as made up, while possibly not competent in evidence, should be permitted to be used to refresh the witness' recollection. Even where the witness could not remember all of the details at the time of the trial, but testified that he knew it to be true and correct, he lays such a foundation as to entitle the list to be used to refresh the witness' recollection. *St. Onge v. Hartford Fire Ins. Co.*, 204 Ill. App. 127–137.

All that is required to make the items in a memorandum competent is proof that the items contained therein were made recently with reference to the events, and that the party making them knew them to be correct, and that the party for whom they were made and who testified concerning them knows from his own knowledge, and from knowledge obtained in connection with the matter over which he has supervision, that they are true. *O. S. Richardson Fueling Co. v. Seymour*, 235 Ill. 319–323.

In considering the contention of plaintiff in error that the court erred in admitting testimony on the part of defendant in error, it is proper to keep in mind that the objections of plaintiff in error are general in character and do not specifically state, in many instances, the grounds of the objection made, and in a number of instances the testimony of the witness with reference to the damage done to the various articles in said building, were not objected to.

On the whole, we are of the opinion that we would not be warranted in reversing the judgment on account of the ruling of the court on the admissibility of evidence.

We are not unmindful of the fact that the plaintiff in error did not offer any proof bearing upon the amount of damages sustained by the defendant in error, but did make the following admission, "Of course the water, debris, and the like, flooding into the basement of the newspaper building, did great damage to the machines, stock, supplies, etc."

We have examined the errors that were in any manner discussed by plaintiff in error, and we conclude therefore that no reversible error was committed and the judgment of the circuit court of Winnebago county should be affirmed, which is accordingly done.

*Judgment affirmed.*